UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEIGHBORHOOD ASSOCIATION OF )
THE BACK BAY, INC., et al.,     )
                                )
Plaintiffs,                     )   CIVIL ACTION
                                )   NO. 05cv11211-JLT
v.                              )
                                )
FEDERAL TRANSIT                 )
ADMINISTRATION and              )
MASSACHUSETTS BAY               )
TRANSPORTATION AUTHORITY,       )
                                )
Defendants.                     )

**MEMORANDUM IN SUPPORT OF THE MBTA'S MOTION
TO STRIKE THE AFFIDAVIT OF JANET HURWITZ**

Defendant Massachusetts Bay Transportation Authority ("MBTA") has taken he unusual step of moving to strike the Affidavit of Janet Hurwitz ("Affidavit"). The MBTA has done so because the filing of the Affidavit and the actions of the affiant as they are described in the Affidavit appear to violate the statutorily-established relationship between the affiant and the MBTA and because counsel have been unable to resolve this matter in a way that would avoid the necessity of filing the motion.[1] In brief, the Affidavit shows that:

- In 1994 and 1995 the affiant was a consultant to the MBTA and was an author of the preliminary study that was the basis for subsequent work on making stations on the MBTA's Green Line (including the Copley Square Station) accessible to people who cannot now use the stations.

---

[1] *See* the Rule 7.1 Certification at the conclusion of the motion.

- Beginning at the latest in 2003, affiant took positions on behalf of plaintiff Neighborhood Association of the Back Bay ("NABB") concerning the appropriateness of the MBTA's planning for the Copley Square accessibility improvements; those positions were often at odds with the positions taken by the MBTA; those positions were, in the affiants view, based in part on work she had done for the MBTA in 1994 and 1995.

These facts suggest that the affiant violated certain provisions of Massachusetts General Laws Chapter 268A.

In addition, much of the material in the Affidavit and many of its attachments are hearsay and should be stricken on that ground.

I. **CONFLICT OF INTEREST**

The Affidavit of Janet Hurwitz states that "Working for Stull and Lee, between 1994 and 1995, I was one of the architects that prepared the Schematic Design Report for the MBTA's Light Rail Accessibility Project . . .. This report provides the basis for all later design stages for the current accessibility program." Hurwitz Affidavit ¶ 6. Attached to this memorandum as <u>Exhibit 1</u> are copies of the relevant pages of the October 3, 1994 contract pursuant to which work on the Schematic Design Report referred to by Ms. Hurwitz was done.[2] This contract confirms Ms. Hurwitz's assertion that she worked for the MBTA on the Schematic Design Report. Indeed, the second page of <u>Exhibit 1</u> (bearing the heading "EXHIBIT 'A'/ Page 4 of 20") shows that Ms. Hurwitz was the "Project Architect" and that the costs associated with her work were higher than those for anyone else at the architectural firm of Stull & Lee.

---

[2] The contract is admissible under the business record exception to the hearsay rule. Fed. R. Evid. 803 (6). The entire contract is available if the court wishes to review a copy. The MBTA provided a copy of the entire contract to plaintiffs' counsel. *See* Rule 7.1 Certification.

In Paragraph 7 of the Affidavit, Ms. Hurwitz identifies herself as the Chair of the Architecture Committee of NABB. Paragraphs 15-20, 22, 25, 26, 29 and 31-37 of the Affidavit detail NABB's and Ms. Hurwitz's involvement with and views the Copley Square accessibility project. Several of these paragraphs purport to offer expert testimony about the Copley Square project and criticize various aspects of the MBTA's decision-making process with respect to the project. In support of that criticism, in Paragraph 32, the Affidavit cites the Schematic Design Report that Ms. Hurwitz worked on for the MBTA.

The filing of the Affidavit appears to violate the Massachusetts statute that forbids individuals who worked on a matter for a state agency from subsequently working for anyone else on that matter. Mass. General Laws c. 268A ("Conduct of Public Officials and Employees") imposes criminal penalties on, among others,

> [a] former state employee who knowingly acts as agent . . . for . . . anyone other than the commonwealth or a state agency, in connection with any particular matter in which the commonwealth or a state agency is a party or has a direct and substantial interest and in which he participated as a state employee while so employed.

M.G.L. c. 268A, § 5.(a).

The statute defines a "state employee" as "a person performing services for . . . a state agency, whether by . . . contract of hire or engagement, whether serving with or without compensation, on a full, regular, part-time, intermittent or consultant basis . . . ." Chapter 268A, § 1.(q). A state agency is "any department of state government . . . and any independent state authority . . . ." Chapter 268A, § 1.(p).[3]

---

[3] In the Matter of Henry M. Doherty, Massachusetts State Ethics Commission (November 18, 1982), concluded that the MBTA's enabling statute "established the MBTA as an 'independent state authority' and, therefore, it is within the aforementioned definition of state agency."

Section 5 of Chapter 268A is intended to protect the commonwealth and its agencies from the potential "disloyalty" of their employees:

> The undivided loyalty due from a state employee while serving is deemed to continue with respect to some matters after he leaves state service. Moreover, [Section] 5 precludes a state employee from making official judgments with an eye, wittingly or unwittingly, consciously or subconsciously, toward his personal future interest. Finally, the law ensures that former employees do not use their past friendships and associations within government or use confidential information obtained while serving the government to derive unfair advantage for themselves or others.

Conflict of Interest Opinion, EC-COI-92-14 (April 13, 1992). It is difficult to imagine a clearer case than this one of the mischief that the statute was intended to avoid.[4]

Ms. Hurwitz willingly accepted the benefits of the status of "state employee". She is bound to accept its constraints as well. While there is nothing that this court can do about the actions that are described in the Hurwitz Affidavit, it should not countenance the filing of the Affidavit in this case.

## II.   HEARSAY

In addition, substantial portions of the Hurwitz Affidavit and the documents to which it refers are inadmissible hearsay and would have to be disregarded. *See* Affidavit ¶¶ 26, 28 and 30.

### CONCLUSION

For the foregoing reasons, the Affidavit of Janet Hurwitz should be stricken and references to it in plaintiffs' papers should be disregarded.

---

[4] Even leaving aside the state statute, Ms. Hurwitz's actions are troubling. The 2004 Code of Ethics & Professional Conduct published by the American Institute of Architects includes the following Ethical Standard: "E.S. 3.2. Conflict of Interest: Members should avoid conflicts of interest in their professional practices and fully disclose all unavoidable conflicts as they arise." *See* http://www.aia.org/SiteObjects/files/codeofethics.pdf.

Respectfully submitted,

**Massachusetts Bay Transportation Authority**

By its attorneys,

/s/ Stephen M. Leonard
Stephen M. Leonard (BBO #294080)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
(617) 856-8200

Dated: October 7, 2005

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by electronic mail and U.S. mail.

/s/ Stephen M. Leonard
Stephen M. Leonard (BBO #294080)

# 1391573 v1 - MELTZRA - 020445/0008

EXHIBIT 1

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY
CONTRACT NO. S5PS11

LIGHT RAIL ACCESSIBILITY PROGRAM
COORDINATING CONSULTANT

THIS CONTRACT, made this *3rd* day of *October* in the year nineteen hundred and *ninety four* effective March 21, 1994, by and between the MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, a body politic and corporate and a political subdivision of the Commonwealth of Massachusetts, hereinafter referred to as the "AUTHORITY" or "MBTA" and GANNETT FLEMING, INC., a Corporation duly organized under the laws of the State of Delaware, and having a usual place of business at 150 Wood Road, Braintree, Massachusetts 02185, hereinafter referred to as the "ENGINEER".

WITNESSETH THAT:

WHEREAS, the Authority has undertaken an Accessibility Improvements Program funded under Federal Transit Administration, U. S. Department of Transportation, Project Nos. MA-90-0112 and MA-23-9017, and the Commonwealth of Massachusetts, Chapter 33 of the Acts of 1991, and

WHEREAS, the Americans with Disabilities Act (ADA) has required that certain key stations be made accessible, and the Authority has identified 29 light rail stations in the Key Station Plan, and

WHEREAS, the Authority desires to engage the Engineer to perform Phase I - Schematic Design Services, as hereinafter described, of accessibility improvements to the light rail system, and

WHEREAS, the work to be performed under this Contract shall not duplicate work undertaken by others in the Authority, by other consultants of the Authority, or by other agencies.

NOW THEREFORE, the parties agree that:

In consideration of the payments to be made to the Engineer by the Authority, which are set out in Article III, the Engineer will perform design engineering services in accordance with the provisions of this Contract.

### ARTICLE III - COMPENSATION AND PAYMENT

The Engineer agrees to complete, to the full satisfaction of the Authority, all of the services described herein; and the Authority agrees to pay the Engineer as full compensation for work performed, including all expenses incurred and incidental thereto, an estimated amount not to exceed a Ceiling Price of One Million, Five Hundred Fifty Thousand, Seven Hundred and Forty Three ($1,550,743.00) dollars including a fixed fee of Ninety Two Thousand, Two Hundred and Ninety Eight ($92,298.00) dollars in accordance with the schedule shown in Exhibit "A".

The Ceiling Price is the maximum compensation to be paid for completion of all services including allowable expenses incurred and fixed fee for the scope of work described herein:

1. The Authority shall reimburse the Engineer for the actual salaries paid engineering and technical employees by the Engineer not including salaries or other payments to partners or principals, unless otherwise specifically provided, for the time such employees are directly utilized on the work.

    If it is the usual practice for partners or principals to perform certain basic technical work, they must be compensated for the time when they are actually engaged on the work, but only at a rate of pay commensurate with the type of work performed, provided that written approval is obtained from the Director previous to the use of said principals. Payment of partners and principals for their administrative duties for these positions will not be allowed, it being considered that their salaries are included under the indirect expense item.

    Line items of cost contained in Exhibit "A" are not intended as individual ceilings for the specific costs identified.

2. The Authority shall reimburse the Engineer for such costs incurred by the Engineer for the performance of the services as are allowable in accordance with Federal Acquisition Regulations, Part 31, in effect as of the date of this agreement.

3. The Authority shall pay the Engineer allowances for the indirect expenses of the home and branch offices of the Engineer at a rate computed in accordance with the applicable cost principles of the Federal Acquisition Regulations, Part 31, in effect on the date of this agreement. The rate used for such computation shall be the audited rate established for the Engineer by its cognizant U. S. Government Audit Agency, by other audit acceptable to the Authority or based upon a final negotiated rate. Pending final determination of such rate on a fiscal year

EXHIBIT "A"
Page 4 of 20

EXHIBIT A
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY
COST PROPOSAL
CONSULTANT PROPOSAL

| FIRM (Name and Local Address) STULL AND LEE, INC. 38 Chauncy Street, Suite 1100 Boston, Massachusetts 02111 | | | CONTRACT TITLE MBTA Light Rail Accessibility Program Schematic Design (Phase I) | | | |
|---|---|---|---|---|---|---|
| CONSULTANT ( ) | | | SUBCONSULTANT ( ) | | | |
| 1- DIRECT LABOR | EST. HOURS | | RATE PER HR. | TOTAL BASIC | TOTAL SPECIAL | TOTAL COSTS |
| | BASIC | SPECIAL | | | | |
| E. Ortiz - Project Manager | 155 | 170 | $28.85 | $4,472 | $4,905 | |
| J. Hurwitz - Project Architect | 549 | 649 | $28.85 | $15,839 | $18,724 | |
| D. Kinsella - Sr. Proj. Designer | 478 | 472 | $21.63 | $10,339 | $10,209 | |
| E. Babnik - Project Designer | 684 | 892 | $15.87 | $10,855 | $14,156 | |
| J. Williams - Designer/Drafter | 648 | 720 | $14.00 | $9,072 | $10,080 | |
| R. Santos - Designer/Drafter | 581 | 627 | $14.00 | $8,134 | $8,778 | |
| K. Fuller - Designer/Drafter | 149 | 349 | $14.00 | $2,086 | $4,886 | |
| TOTALS | 3244 | 3879 | | $60,797 | $71,738 | $132,534 |
| 2- OVERHEAD RATE  1.35 | BASIC | SPECIAL | | OVERHEAD | OVERHEAD | |
| | | | | $82,075 | $96,846 | |
| TOTAL LABOR+OVERHEAD | | | | | | $311,455 |
| 3- PRINCIPAL (Use when O/H not applicable) | EST. HOURS | | RATE PER HR. | TOTAL BASIC | TOTAL SPECIAL | |
| | BASIC | SPECIAL | | | | |
| M. D. Lee - Partner in Charge | 109 | 91 | $87.00 | $9,483 | $7,917 | $17,400 |
| 4- OTHER DIRECT COSTS (Specify on Pg.2) | | | | | | $12,351 |
| 5- TRAVEL (Specify on Pg.2) a. Transportation b. Per Diem or Subsistence TOTAL TRAVEL | | | | | | $270 |
| 6- SUBCONSULTANTS (Specify on Pg.2) | | | | | | $0 |
| 7- GENERAL & ADMINISTRATIVE EXPENSE RATE, IF APPLICABLE ( % of No.s ) | | | | | | |
| 8- SUBTOTAL ALL COSTS | | | | | | |
| 9- FIXED FEE (10% of 2 and 3% of 4-6) | | | | $31,146 | $379 | $31,524 |
| 10- TOTAL ESTIMATED COSTS | | | | | | $373,000 |