UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 05-11211JLT

NEIGHBORHOOD ASSOCIATION OF
THE BACK BAY, INC., and THE
BOSTON PRESERVATION ALLIANCE,
INC.       Plaintiffs,

v.

FEDERAL TRANSIT
ADMINISTRATION and
MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,
       Defendants

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
PRELIMINARY AND FINAL INJUNCTION**

The plaintiffs submit this reply in support of their motion for preliminary and final injunction to address the following contention raised by defendants in their oppositions to their motion:

**Plaintiffs Did Not "Delay" in Seeking Injunctive Relief and Have and Will Suffer Irreparable Harm in the Absence of the Same.**

The defendants argue that the plaintiffs delayed in seeking injunctive relief and that this undermines their assertion that irreparable harm will occur in the absence of such relief. They cite to the First Circuit case of Conservation Law Foundation v. Busey, 79 F.3d 1250 (1st Cir. 1996). That case, however, is distinctly different from this one and, indeed, serves to highlight the fact that the defendants' arguments are without basis.

In Conservation Law Foundation, the plaintiff filed their complaint within six months of the challenged Environmental Impact Statement (FEIS), like the plaintiffs

1

here.[1] The filing of that complaint was not considered untimely or delayed. Rather, what was considered delayed was the fact the plaintiff waited some three years after filing suit before seeking injunctive relief. Clearly, that scenario is dramatically different than the passage of a mere three months between the filing of the complaint and the motion here.[2] Additionally, the Amended Complaint here specifically requested injunctive relief.

Further, during the three years time in <u>Conservation Law</u> between the filing of the complaint and the move for injunctive relief, the State had issued $8 million in general obligation bonds to fund the subject operation and $40 million in guaranteed bonds; construction contracts aggregating $50 million had been entered and federal grants of more than $6 million received to support operations; and more than 1,100 persons became employed by tenants and agencies as a result of the development project. There simply is nothing comparable here that occurred. Indeed, <u>Conservation Law</u> highlights the role that injunctive relief can and should play here; namely, avoiding these type of commitments to the project until it is determined whether the defendants complied with the law and undertook the informed consideration that the National Historic Preservation Act (NHPA), Section 4(f) and other law requires, as plaintiffs discuss in the memorandum in support of their motion.

The defendants' argument ignores important features of these laws. For example, NHPA is designed to influence the decision making process; its aim is to make government officials notice historical considerations and take them into account. When a decision to which NHPA obligations attach is made without the informed consideration it requires, the harm that NHPA intends to prevent has been suffered.

---

[1] Another party to that case filed their complaint nine months after the FEIS.
[2] During that time, the plaintiffs amended their complaint, and the FTA issued its administrative record in mid-August.

2

See Sierra Club, et al. v. Marsh, 872 F.2d 497, 500 (1st Cir. 1989) (discussing same in context of NEPA).[3]

It is appropriate for the courts to recognize this type of injury in a NHPA case for it reflects the very theory upon which it is based. Sierra Club, supra; Massachusetts v. Watts, 716 F.2d 946, 952-53 (1st Cir. 1983)(district court should take account of potentially irreparable nature of decision-making risk when considering request for preliminary injunction). The challenged course of conduct should not be permitted to proceed because each event represents a link in the chain of bureaucratic commitment that will become progressively harder to undo the longer it continues. Sierra Club, supra.[4] Yet, this is what the MBTA proposes it be permitted to do. Indeed, the MBTA argues they will suffer "irreparable harm" if they cannot so proceed. Clearly, this argument is contrary to the above case law, including Conservation law Foundation that the defendants cite. Indeed, that case law indicates that the delay which the defendants cite as "harm" is the better course of action in a case such as this, rather than having a contractor begin work and monies be expended.[5]

Another case cited by MBTA, Quince Orchard Valley Citizens Association, Inc. v. Hodel, 872 F.2d 75 (4th Cir. 1989), likewise does not aid defendants' position. It simply is not applicable inasmuch as the plaintiff had filed and dismissed an original action with prejudice and then, some eight months later (and some nine months after the final EIS), filed a second action. During that time, the defendants undertook contractual

---

[3] NHPA is considered similar to NEPA except that it requires consideration of historic sites rather than the environment. FTA Opposition, n. 20.

[4] Sierra Club is instructive. There, the Club filed an action, complaining that final Environmental Impact Statement (EIS) did not adequately evaluate environmental effects of the selected project site or adequately explore other options. Id. at 498. The District Court denied the Club's request for preliminary injunction. The First Circuit vacated that decision.

[5] The MBTA acknowledges that it will begin to incur costs under the contract once the contractor commences work. Stoeffel Affidavit, ¶ 15.

3

obligations and spent over $7 million in construction. The present case, again, differs dramatically. In fact, in contrast to Quince Orchard, the MBTA opened the bids, awarded a bid and authorized its staff to enter a contract for the project *after* the filing of this action.

In a footnote, the MBTA asserts it has a "viable laches" defense." MBTA opposition, n. 13. The case law is to the contrary, particularly in cases in which historic preservation issues are involved. See Hall County Historical Society v. Georgia Dept. of Transp., 447 F.Supp. 741 (N.D. Ga. 1978); Apache Survival Coalition v. United States, 21 F.3d 895 (9th Cir. 1994) (same lenient standard for granting preliminary injunction applied to NEPA claims should be applied to challenges brought under NHPA).

In Hall, as here, the plaintiff communicated to the defendants its objections to the project as planned. The defendants, however, went ahead and even awarded the construction contract. Thirty days later, but before work had begun on the project under that contract, the Hall plaintiff filed suit. The court ruled that the cost of altering or abandoning that project did not outweigh the public interest in and potential benefits of, injunctive relief pending compliance with any statutes that may have been violated. The action was not barred by laches.

The same is true here. Plaintiffs were apprised of the Copley plan at its 75% design phase, though defendants should have involved them earlier.[6] At that time, the plaintiffs promptly communicated their objections to the same. The plaintiffs acted more promptly that the defendants in Hall. Plaintiffs filed the instant suit before the bids opened and before the award of any contract. There is no laches defense available

---

[6] Defendants say that the plaintiffs should have applied to be consulting parties but the fact remains that is the responsibility of the federal agency – the FTA – to identify parties entitled to be consulting parties and ask them to participate – not the other way around. 36 CFR § 800.3(f). See Plaintiffs' Memorandum, p. 17. Moreover, the defendants were aware of the plaintiffs interest in participating. Id., p. 18.

4

here.

That the defendants proceeded on their course of conduct in opening the bids after the plaintiffs' suit and then proceeded to enter a contract after the motion for injunctive relief is a consequence they must bear. Further, as indicated by the MBTA, other avenues are available to it with respect to the contract and the project if an injunction issues. Stoeffel Affidavit. In contrast, there are no other avenues available to the plaintiffs and the public in terms of harm done to historic resources by a failure to comply with statutes and provisions put in place to safeguard them.

### Conclusion

In light of the foregoing, the plaintiffs submit that they did not delay in seeking relief and that irreparable harm has and will be suffered in the absence of the grant of injunctive relief. They ask that this Court grant their motion for preliminary and final injunction.

    Respectfully submitted,
    The Plaintiffs,
    Neighborhood Association of the Back Bay,
    Inc. and The Boston Preservation Alliance, Inc.
    By their Attorneys,


/s/ Laurence E. Hardoon
Laurence E. Hardoon, BBO# 221360
Brody, Hardoon, Perkins & Kesten LLP
One Exeter Plaza
Boston, MA 02116
(617)880-7100


/s/ John R. Devereaux
John R. Devereaux, Esq., BBO#122200
Neighborhood Association of the Back Bay, Inc.
337 Newbury Street
Boston, MA 02115
(617) 267-0377

DATED: October 17, 2005