UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No.: 05-11211JLT

NEIGHBORHOOD ASSOCIATION OF THE
BACK BAY, INC., and THE BOSTON
PRESERVATION ALLIANCE, INC.

    Plaintiffs,

v.

FEDERAL TRANSIT ADMINISTRATION
and MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,

    Defendants

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL

The plaintiffs, Neighborhood Association of the Back Bay, Inc. and the Boston Preservation Alliance, Inc., submit this memorandum of law in support of their motion for injunction pending appeal from this Court's Order of November 8, 2005. Fed. R. Civ. P. 62 (c).

I.  **Background.**

This Court is familiar with the background in this case and the plaintiffs thus will not restate the same here. The plaintiffs are now before this Court to seek an injunction in this matter pending their appeal of this Court's Order dated November 8, 2005, which denied their motion for injunctive relief.

II. **Argument in Support of Injunction Pending Appeal**

Rule 62(c) authorizes this Court to grant an injunction during the pendency of an appeal from an injunction order. See Mass. R. Civ.P. 62(c); Wright and Miller, 11 Fed. Prac. & Proc. Civ. 2d § 2904. It provides in relevant part as follows:

"When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

This rule codifies the inherent powers of this Court to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment in a case. Wright and Miller, supra. The plaintiffs submit that an injunction pending their appeal is the order necessary here to preserve the status quo and to ensure the effectiveness of the eventual judgment.

Under Rule 62(c), the moving party generally must show: (1) a likelihood of prevailing on the merits of the appeal; (2) irreparable injury will result unless the injunction is granted; (3) no substantial harm to the other interested parties will result from the issuance of the injunction and (4) where the public interest lies. See Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.E.2d 724 (1987); Sweeney v. Bond, 519 F.Supp. 124 (E.D. Mo. 1981). The consideration of these factors is an equitable one, see John Doe Agency v. John Doe Corp., 488 U.S. 1306, 1308, 109 S.Ct. 852, 853 (1989), and a strong showing of one factor may compensate for a weak showing of other factors. See Providence Journal Co. v. Fed. Bureau of Investigation, 595 F.2d 889, 890 (1st Cir .1979). The plaintiffs submit that the Court's evaluation of these factors should lead it to conclude that an injunction pending appeal is warranted in this case.

**1. The First Prong -- Likelihood of Prevailing on the Merits.**

The plaintiffs predict that they face a significant likelihood of success on their appeal of this Court's Order. They submit that they were entitled to an injunction for the reasons stated in their memorandum, reply memorandum, attachments and exhibits submitted to this Court in connection with their motion for injunctive relief. Again, where the Court is familiar with those reasons and heard argument on the same, the

plaintiffs will not restate those reasons here in detail. In brief summary of that position, the plaintiffs state that:

    1. The defendants failed to comply with Sections 106 and 110 of the National Historic Preservation Act (NHPA), Section 4(f) of the Department of Transportation Act, and M.G.L. c. 161A, § 5(k), with respect to changes they propose be made to the Copley T Station and that they should not be permitted to proceed with that project unless and until they comply with, and conduct appropriate and full review pursuant to, these statutes.

    2. That review must include consulting with *all* consulting parties and the Advisory Council on Historic Preservation (ACHP) given the undisputed fact that the undertaking here has the potential to cause effects on historic properties in the area and, in fact, involves the undisputed and actual altering of a National Historic Landmark the Boston Public Library.

    3. The defendants failed to inform those parties it did speak with that such potential and actual altering would occur and, indeed, erroneously represented in their Section 106 and Section 4(f) Report (the Carolan Report) that "[n]o actual work will be undertaken on any structures in the immediate project area except for the inbound kiosk."

    4. The FTA simply rubberstamped the MBTA's representations and review and failed to conduct a complete and independent Section 106 and Section 4(f) review as required.

    5. When, as here, National Historic Landmarks (NHLs) are involved, additional protections are to be provided under Section 110, but the defendants here wholly failed to conduct *any* review or process under that statute.

    It bears note, however, that in the context of a request for an injunction pending

appeal, a court is not required to find a substantial likelihood that the movant will be successful on appeal. Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991); Simon Property Group, Inc. v. Taubman Centers, Inc., 262 F. Supp. 2d 794 (E.D. Mich. 2003). Rather, a movant can satisfy this element where substantial legal questions or matters of first impression are at issue and such action is necessary to preserve the status quo. Id. See also Sweeney, 519 F. Supp. 124, 132 (D.C. Mo. 1981) (stating that "any trial judge is reluctant to find that a substantial likelihood exists that he or she will be reversed" and, as a result, trial courts have issued or stayed injunctions pending appeal where such action was necessary to preserve the status quo or where the legal questions were substantial and matters of first impression.). The First Circuit has acknowledged that the first prong of a Rule 62 motion should be viewed differently and does not rigidly apply when serious legal questions are presented by an appeal and where denial of relief pending appeal will destroy the status quo. Providence Journal Co. v. Federal Bureau of Investigation, supra ("Our reading of the district court's opinions and of the briefs indicates there are serious legal questions presented.") Such is the case here. This case presents substantial questions of interpretation of federal law and an injunction pending appeal is necessary to preserve the status quo.

    As plaintiffs have noted in their submissions to this Court, there are over 80,000 designated historic properties in the United States. However, there are only about 2300 certified National Historic Landmark properties in the whole country. Three of the most significant of those 2300 are clustered together right here in Copley Square – The Trinity Church—The Old South Church—and the original McKim building of the Boston Public Librar. This case involves two of those three properties, the Old South Church (OSC) and the Boston Public Library (BPL) and the defendants' intentions to

alter those properties. This case presents substantial legal questions as to interpretation of Sections 106 and 110 of NHPA and Section 4(f), and their requirements, including the following:

> **a. Whether the defendants can undertake a project that affects two NHL properties without making any reference to or finding or review pursuant to Section 110 of the NHPA.**

Section 110 of NHPA, codified at 16 U.S.C. § 470h-2, provides, in pertinent part, as follows:

> "(f) Planning and actions to minimize harm to National Historic Landmarks
>
> Prior to the approval of any Federal undertaking which may directly and adversely affect any National Historic Landmark, the head of the responsible Federal agency shall, to the maximum extent possible, undertake such planning and actions as may be necessary to minimize harm to such landmark, and shall afford the Advisory Council on Historic Preservation a reasonable opportunity to comment on the undertaking."

The FTA, in its Opposition to the Plaintiffs' Motion, acknowledged that this section "imposed additional consultation requirements upon the federal agency …." It suggests, however, that although it did not comport with those additional consultation requirements it nonetheless can be said to have "fulfilled its obligations under § 110(f)" by virtue of its § 106 and § 4(f) analyses. Id. They cite no case law in support of this contention.[1] Indeed, given the limited number of NHLs in this country, the reported litigation under section 110 is sparse. But, the scarcity of case law provides no basis for ignoring the language and mandate of the statute and its regulations. Indeed, it is difficult to envision why the Legislature would have created a separate provision regarding NHLs if sufficient protection were afforded these special landmarks by virtue of an agency's review under other sections, particularly where the regulations are

---

[1] The MBTA cites to one case in a footnote in its section 110 discussion (at page 26 of its Opposition), but that case does not appear to discuss section 110.

identified as "[s]pecial requirements for protecting National Historic Landmarks." 36 CFR § 800.10 (emphasis added).

Meanwhile, the MBTA, in its Opposition to the Plaintiffs' Motion, acknowledges that section 110(f) contains a mandatory consultation requirement but maintains that it was not triggered here because the FTA had determined there was no adverse effect. The MBTA cites no authority for this proposition, and the language of the statute and its regulations belie this assertion. Contrary to the MBTA's contention, section 110(f) is triggered when a NHL "*may be*" directly and adversely affected. 36 CMR § 800.10(a). Certainly, such was the case here. The FTA itself acknowledges that an issue in this case was avoiding "an adverse impact on historic properties." FTA Opposition, p. 28. To that end, it should have conducted a section 110 review that included consultation with the ACHP. It did not. The defendants' argument that they can proceed with the Copley Station Project despite this failure presents a substantial legal question.

The FTA also did not notify the Secretary of the Interior of any consultations regarding the NHLs Old South Church and BPL nor did it invite the Secretary to participate in such consultation, additional and separate requirements for NHL property set out in 36 CMR § 800.10(c). The defendants argued that they can proceed despite this added failure under Section 110 because the DOI stated that it "considers the requirement concerning the National Historic Landmark status as being satisfied" in its response to the Section 4(f) review, citing AR 680-681. That assertion, however, does not relieve the defendants of their duty to comply with Section 110.

First, the meaning of the DOI's statement is unclear inasmuch as there is no doubt that the BPL and OSC have NHL status. Second, the DOI's statement only references the defendants' failure to notify it "as to the effect determination" and makes no reference to the failure to notify it of consultations and the failure to invite it to

participate in such consultations. Third, the MBTA states that the DOI's statement was made in the context of a "somewhat ambiguous legal setting." MBTA Opposition, p. 26. Lastly, the Section 4(f) evaluation itself is deficient and defective, as discussed in the plaintiffs' submissions to this Court and below, and thus could not form a basis for comporting with Section 110.

This matter thus presents substantial legal questions as to interpretation of Section 110 of NHPA and as to the scope of its language and requirements, issues which have not been clearly addressed in this Circuit. These questions presents an appropriate basis for issuing an injunction pending the appeal of this matter.

> **b. Whether the Defendants can have complied with Section 4f if they failed to present and provide to the DOI information regarding alternatives that would have avoided use of, and would have minimized harm to, historic properties.**

Section 4(f), codified at Section 303 of Title 49, states, in pertinent part as follows:

> (a)(1) The Administration may not approve the use of land from ... any significant historic site unless a determination is made that:
> (i) There is no feasible and prudent alternative to the use of land from the property; and
> (ii) The action includes all possible planning to minimize harm to the property resulting from such use.
> (2) Supporting information must demonstrate that there are unique problems or unusual factors involved in the use of alternatives that avoid these properties or that the cost, social, economic, and environmental impacts, or community disruption resulting from such alternatives reach extraordinary magnitudes.
> (b) The Administration will determine the application of section 4(f). Any use of lands from a section 4(f) property shall be evaluated early in the development of the action when alternatives to the proposed action are under study.

The defendants failed to conform to these requirements here. As plaintiffs discussed in their submissions, there were prudent and feasible alternatives available with respect to the project here. These options are discussed at pages 3-4 of plaintiffs' memorandum. They were dismissed out of hand by the MBTA at the outset, without involvement of the DOI, ACHP, State Historic Preservation Officer, Boston Landmarks Commission, Massachusetts Historic Commission, the plaintiffs or any other interested

party. Rather, the MBTA decided on its own which options would form the basis of the project's design. Also, the FTA has admitted that it did not include an option of relocating the inbound elevator headhouse to non-NHL property in its § 4(f) evaluation but determined on its own that this other option was not prudent and feasible.

This conduct runs counter to the language of Section 4(f) and its requirement that the Administration be involved. See 23 CFR § 77. 133 (i) (evaluations of alternatives to avoid the use of section 4(f) land and of possible measures to minimize harm to such lands shall be developed by the applicant *in cooperation with the Administration)* (emphasis added). Yet, the defendants maintain they complied with this statute.

> **c. Whether there can there be a determination of no adverse impact under § 106 of NHPA if the undertaking presents adverse effects and where the undertaking is not modified nor conditions imposed to avoid such adverse effects.**

An adverse effect is found when a project may alter, directly or indirectly, any of the characteristics of a historic property in a manner that would diminish the integrity of the property's setting, location, feeling or association. 33 C.F.R. §800.5(a)(1). A non-exclusive list of examples of adverse effects on historic properties include

(1)  "[p]hysical destruction of or damage to all or part of the property";
(2)  "[a]lteration of a property, including restoration, rehabilitation … and provision of handicapped access";
(3)  "[c]hange of the character of the property's use or of physical features within the property's setting that contribute to its historic significance"; and the
(4)  "[i]ntroduction of visual, atmospheric or audible elements that diminish the integrity of the property's significant historic features."

36 C.F.R. § 800.5(a)(2). The undertaking here involves the physical destruction of and damage to the BPL and the alteration of it for provision of handicapped access, as well as the introduction of visual elements both in front of the BPL and the OSC (including elements that destroy the historic symmetry of the BPL as discussed in plaintiffs' submissions), yet the defendants determined there would be no adverse effect under §

106. However, where as here an undertaking presents the above factors, an agency may propose a finding of no adverse effect only if the undertaking is modified or conditions are imposed to avoid adverse effects, such as the subsequent review of plans for rehabilitation by the SHPO to ensure consistency with the Secretary's Standards for the Treatment of Historic Properties. 36 CMR § 800.5(b). This was not done here.

The defendants acknowledge that steps of the BPL will be physically damaged by the project, FTA Opposition, p. 23 n.19, but simply conclude that such damage is not inconsistent with a finding of adverse effect. According to above, however, physical damage to an historic site is an adverse effect.

Similarly, the addition of an elevator kiosk on the BPL steps constitutes an alteration of the property for the provision of handicapped access, as well as the introduction of a visual element (and one which will destroy the historic symmetry of the BPL). See Affidavit of Richard Guy Wilson attached to Plaintiffs' Memorandum. Yet, again, the defendants make a conclusory assertion to the contrary. They do not contend that any modifications or conditions were imposed to avoid these adverse effects or those to the OSC from the work on the outbound headhouse and stairwell. Rather, they make such argument *only* with respect to the rehabilitation of the existing inbound kiosk, claiming that it would be consistent with the Secretary's Standards.

Given the presence of adverse effects for which no modifications were made or conditions imposed to avoid them, a finding of no adverse effect was inappropriate under § 106. The plaintiffs have thus satisfied the first prong of the four-part test for an injunction pending appeal. The other factors also weigh heavily in allowing it.

    **2) The Second and Third Prongs -- Irreparable Injury Will Result Unless An Injunction Pending Appeal Is Granted While No Substantial Harm Will Result from Its Issuance.**

The project has already gone to bid and the MBTA is preparing to sign a construction contract at any time.  See Affidavit of Michael Stoffel, submitted by the MBTA.  Once that contract is executed, and the contractor meets the bonding and insurance requirements, the contractor will receive a Notice to Proceed and may commence work on the project.  Id.  Indeed, the MBTA just recently stated that it is directing "its contractor to move forward" with this project and that they are not going to wait to start construction.  "Neighbors Desperate to Disable T Proposal," *Boston Herald* (11/22/05), a copy of which is attached.

Thus, if an injunction is not issued pending the appeal of this Court's order, the MBTA and its contractor will move forward on the project and work will be commenced.  It is undisputed that, at a minimum and among other things, the plan involves the physical destruction of a part of the NHL BPL to accommodate an elevator headhouse and present serious issues in terms of the structure of the OSC.  The plaintiffs are simply asking that such activity be enjoined while the First Circuit addresses the significant legal questions regarding the interpretation of the statutes aimed at protecting and preserving historic sites.

Notably, these laws are designed to influence the decision making process by making government officials notice historical considerations and take them into account.  Thus, it has been stated that when, for example, a decision to which NHPA obligations attach is made without the informed consideration it requires, the harm that NHPA intends to prevent has, in fact, been suffered.  See Sierra Club v. Marsh, 872 F.2d 497, 500 (1st Cir. 1989) (discussing same in context of NEPA).

Sierra Club is instructive on this point.  There, the Club filed an action, complaining that the agency had not adequately evaluated environmental effects of a selected project site and did not adequately explore other options.  Id. at 498.  The District Court denied

the Club's request for preliminary injunction, ruling that the plaintiffs had failed to make a showing of irreparable injury. The First Circuit vacated that decision, ruling that the plaintiff would suffer harm if they were denied an injunction, if a lease sale for the selected site took place, and if the court then held that a supplemental environmental impact statement was required. By then, time and effort would have gone into planning the development of the leased site and each such event "represents a link in a chain of bureaucratic commitment that will become progressively harder to undo the longer it continues. Once large bureaucracies are committed to a course of action, it is difficult to change that course – even if new, or more thorough, NEPA statements are prepared and the agency is told to "redecide." Id. at 500. The presence of this type of harm merits an injunction.

   The harm at stake is harm to historic properties, including NHLs, but the harm consists of the added risk to such properties that takes place when governmental decisionmakers make up their mind without undertaking appropriate analysis of their decisions upon those sites. The object of §§ 106 and 110 of NHPA and Section 4(f) is to minimize that risk, the risk of uninformed choice. Id. The risk implied by a violation of these provisions is that real harm will occur through inadequate foresight and inadequate deliberation and consideration of lasting effects upon historic properties.

   The MBTA argues that it will suffer "irreparable harm" if it cannot proceed with the project, i.e. if its bureaucratic steamroller is not permitted to roll, but as noted the case law suggests it would be better to halt the steamroller while it is determined whether appropriate review was undertaken. Sierra Club, supra. The case law indicates that the delay which the defendants cite as 'harm" is the better course of action in a case such as this, rather than having a contractor begin work and monies be expended. Conservation Law Foundation v. Busey, 79 F.3d 1250 (1st Cir. 1996).

### (4) The Fourth Prong -- Where the Public Interest Lies.

As noted, when a decision impacting historical sites is made without the informed consideration that the law requires, the harm that those laws intend to prevent has been suffered. It may well be that such harm has occurred here; that is, that the project was designed without the informed consideration required by NHPA and § 4(f) for example. It is certainly in the public interest to determine whether or not the required informed consideration was undertaken here before historic sites are forever altered.

Public interest and policy lie in favor of making sure this project -- a project which directly involves 2 of only 2300 NHLs in the country -- followed the proper channels and proper statutory procedures. The public interest does not lie in sacrificing the important interests at stake simply because the defendants feel committed to their design and plan. This is true even though the defendants' plan has a very admirable goal of providing handicapped access. The provision of such access does not override or obscure the defendants' statutory duty to ensure that its design and plan for that access is the result of informed consideration and review of the project's impact on historic sites and NHLs as envisioned by NHPA and Section 4(f).

The plaintiffs do not submit that this case involves an "either/or" situation – either handicapped accessibility or statutory compliance. Rather, they submit that accessibility can and must be achieved through the appropriate process set out in federal statutes and guidelines specifically and purposely enacted to protect historic sites and National Historic Landmarks. It is only through that mandated process that the appropriate plan for providing handicapped access to the Copley Station can and should be achieved. It lies in the public interest to determine whether the defendants'

plan here for providing such access to the Copley Station was, in fact, the result of this statutory process before the plan is permitted to proceed any further. The plaintiffs firmly contend that there are highly viable alternatives that provide excellent accessibility without compromising the historic integrity of these valuable NHL properties that were not properly considered.

### III. Conclusion

In light of the foregoing, the plaintiffs request that this Court allow this motion, and grant injunctive relief pending their appeal of this Court's Order -- which relief would include enjoining disbursement and the use of federal funding for the Copley Station project and enjoining the project from proceeding at this juncture.

Respectfully submitted,
The Plaintiffs,
Neighborhood Association of the Back Bay, Inc. and
The Boston Preservation Alliance, Inc.
By their attorneys,

_/s/ Laurence E. Hardoon_
Laurence E. Hardoon, Esq., BBO# 221360
Deidre Regan Esq., BBO# 552432
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

_/s/ John R. Devereaux_
John R. Devereaux Esq., BBO# 122200
Neighborhood Association of the
Back Bay, Inc
337 Newbury Street
Boston, Massachusetts 02115
(617) 267-0377

Dated: November 23, 2005

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 11-23-05
_/s/ Laurence E. Hardoon_



| GO! |

### herald.com

advertisement ▼

Home > News & Opinion > Local / Regional News > RSS Feed

# Neighbors desperate to disable T proposal
By Casey Ross
Tuesday, November 22, 2005 - Updated: 09:12 AM EST

 E-mail article     View text version    ★ View most popular

Fearful of impending damage to historical landmarks outside their windows, Back Bay neighbors are mounting a last-ditch appeal to prevent the MBTA from building handicapped access facilities in front of historic buildings near Copley station.

"Our primary focus is maintaining the specialness of the historic district," said Peter Sherin, president of the Neighborhood Association of the Back Bay. "The (MBTA) has not at all looked at the historical intrusion" posed by the accessibility project.



The neighborhood group, whose request for a preliminary injunction was rejected in U.S. District Court, says the T's construction plans unnecessarily endanger the historic character of the Boston Public Library and the Old South Church.

The group's board has voted to appeal the case to the 1st Circuit Court of Appeals – a move that could delay the T's joint $32 million project to renovate both Copley and Arlington stations on the Green Line.

A T spokesman said last night the agency is not going to wait for another court ruling to start construction.

Donna Artery, of Wyoming, walks with her granddaughter Sophie Artery, 9 months, of Boston, along the Harborwalk.(Staff Photo by Angela Rowlings)

**Herald Interactive Tools**

 Related articles

 E-mail article to a friend

 View text version

 Post comments in the forums

 Get RSS feed

 Search site

Subscribe to the Boston Herald

"Having won two court decisions already, the T will direct its contractor to move forward with these key accessibility projects," spokesman Joe Pesaturo said.

The T also prevailed when the neighborhood association filed a separate complaint to block accessibility improvements at Arlington station. The association has not decided whether to appeal that decision.

The T's construction plans for Arlington and Copley stations include overall modernization work, new elevators and signs as well as landscaping improvements and new curbing at street level.

Sherin said the T did not consider alternate locations for elevator headhouses the neighborhood group fears will mar historic views and endanger the physical structure of historic buildings. He also said the T and the Federal Transit Administration did not consider alternatives to planned locations or allow input from the association until late in the review process. "This is not a frivolous suit," Sherin said. "It's something we feel is very important, both as a legal precedent and to preserve the special nature of Copley Square."

Rate this article                                    Low ☆ ☆ ☆ ☆ ☆ High

BostonHerald.com - Local / Regional News: Neighbors desperate to disable T proposal
Case 1:05-cv-11211-JLT    Document 39    Filed 11/23/2005    Page 15 of 15
11/22/05 3:30 PM

Current Rating: ★★★★☆
Your Rating:  You have not rated this article yet

E-mail article    View text version    View most popular

**Ads by Google**

**Historic Homes For Sale**
Long & Foster Extraordinary Homes & Historic Properties in MD, VA & PA
HistoricHomeTeam.com

**The Westin Copley Place**
Get The Guaranteed Best Rates At The Official Westin Website!
www.westin.com

**Copley Square Hotel**
Get Guaranteed Low Rates- Book with the Hotel Experts for Great Deals
www.hotels.com

**Related articles**
- Revised transit projects to be announced by EPA officials
- Bus beef leads to shooting
- T stop lacks lights, cameras: Any action?
- Bigger boat added to T's commuter service
- Police say Revere sex assault story was fabricated

**Today's most read articles** Updated 3:16 PM ET
1. Red Sox reel in Beckett: Sources say deal close to done
2. Patriots report card
3. Pierce all smiles – C's captain has renewed attitude
4. Waterworks – thirsty workers pay: Pike employees pay for bubbler privileges
5. Lucchino hits a HR

**Search the site**

[Enter Keywords] [all] [relevance] [Go!]
Past 7 days  Archives  Google

**Order home delivery**

Save up to 60% ordering Boston Herald home delivery online. » click here

